May it please the Court. Can you identify yourself for the record? I know we know you. Donald Gaffney of the Arizona Bar, appearing on behalf of the Appellate Bank of America. Your Honor, in this particular appeal, we are confronted with the very odd posture that a financially struggling county has refused a tender of nearly a million dollars, which suggests that perhaps something very strange is going on here. In the form of its structured documents on making structured loans, the bank loan was structured in a way to protect the lender against so that its collateral would not be invaded or have a problem. Under that, those loan documentations, it specifically provided that it have an irrevocable power of attorney, which was granted by the entity to the bank, so that it could take various actions to protect its collateral. We have cited in the court record in our brief the specific provision of that loan agreement, which gives that irrevocable power and specifically cross-references the sections regarding the debtor's requirement to pay the taxes on the collateral. Could I? Go ahead. Let me just ask briefly. You argue that the Bank of America has a contractual right under the loan agreement, but I read the loan agreement, and it seems to me that it's silent on that issue. Your Honor, if I could go back to the specific sections. The specific sections are on this, 4.15 of the loan agreement. The borrower shall pay and discharge all taxes. Then Section 4.16, which then refers to all of the obligations of the borrower, and if the borrower does not perform, the lender's rights to pay and perform. So 4.16 then says we have a right to then make all those payments that the debtor has covenanted to do,  and then to make sure that we have the absolute right to pay, we have the irrevocable power of attorney that's granted in 4.16. So it's the cross-references between 4.16 and 4.15. All right. Thank you. Could I ask, before we look at the contract, could I ask a threshold question? And I'm still worried about these mootness issues. I want to make sure I understand what difference it makes to Bank of America. I understand from your letter brief that there's a certain amount of money at stake, and if I'm understanding correctly, the debtors paid the amount that was owing on when you tendered it originally, the April 9th, 2010, but not the additional penalties and interest that accrued since then before your payment in June 2011, or the debtor's payment. But why does Bank of America, what does Bank of America have at stake? Well, two things, Your Honor. For the specific question, we are still the lien holder of record, first lien. To the extent that there are additional taxes against us, that pushes us further down the line. So we have a direct economic interest in preventing higher taxes being assessed in front of us  In a more general way, obviously we have a very strong policy interest that a federal bank should have the power to be able to advance money to pay back taxes on its collateral, regardless of an agreement of two other parties. We believe that was what the irrevocable power of attorney was intended to accomplish. So the district court seemed less interested in whether you had a contractual right to pay on behalf of the debtor and more as to whether you could do it in the courtroom. That's correct, Your Honor. If I could turn to that, because I think it's critical. This issue was raised for the first time in the response brief before the district court. We then filed a reply because we'd never heard of this argument. Our argument is very simple. Yes, there is a statute that says that. We think there has been an absolute and clear waiver by the county that that is how they in fact accept payments. If it could be any more explicit, I would refer to Exhibit 9-10 from the exception record, which is the proof of claim, an example of proof of claim that was filed with the county. The county filed over 50 proofs of claim. Every single proof of claim says in the line that says where to remit your payments for the claim. There's a separate box for your address. There's another box that says if it's different, please send the payments. Proof of claim is under penalty of perjury. It has to be signed by a representative author, authorized representative of the claimant, the county. What did they say to send the money every time? To a post office box 50 times. So 26-10, I think the opposing counsel's point is that the Board of Supervisors can set a different place, but the Board of Supervisors had not set a courtroom for payment. We agree. We agree, Your Honor. There was certainly no specific designation, but the county was appearing in a courtroom in person with a representative at the time that they tendered the payment. The idea that that is not an appropriate offer, and we cited specific statute that in a situation where a person is obligated, we're obligated on a nonrecourse basis regarding the collateral, and we have an irrevocable power of attorney to pay it, that we should be able to go forward and pay it in a situation where the county representative is there on that matter. So are you relying on 1489? Is that what you're referring to? Yes, Your Honor. Because what do we do with the language that says in the absence of an express provision to the contrary? Because that's what Section 2613 seems to be, and that's what the district court was looking at. Your Honor, on the district court's theory, the proof of claims in this case couldn't be paid. Even the monies that were, in fact, if you take it to its logical extension, there is no statutory approval anywhere for the reference to a post office box or the EFT transmission, which you do electronically. So are you saying that the Board of Supervisors haven't approved those different payment places? We have nothing in the record that suggests that they have, and in fact what it is is a voluntary position of the county. The county has put no record in suggesting how they made decisions when they would decide on a post office box or a different address, or they allow it by EFT. There's nothing in the record on that. It was never developed because it appears for the first time in a response, and it wasn't in the record on appeal. And as we pointed out, at the time, as we've cited in the statute, at the time entered, you're supposed to explain why you're rejecting. We have this extended period of time, and then finally when they're preparing the response brief, aha, we'll use the street address of the county in an old statute as our basis for rejecting. They didn't reject on that basis at the time, and it took them months to come up with a theory. We think that that is not an effective rejection of a tender. These were cashier's checks that were tended to the county. So are you suggesting that as a legal matter, because the county took payments at places other than where it was specified, the tax collector's office, that they were legally then could not decline to take it at any other place? We think that they could decline on a reasonable basis, but a declining on a refusal where a county representative in the courtroom with the attorney of record for the county refused it is not a reasonable rejection. That is simply not on the record of the courts. There's no question as to what's being done. That that is not a, if they can reject it because we don't want people tendering payments in dark alleys to somebody who represents L.A. County, that's one thing. But to reject it in a federal courthouse on the record with the county attorney there with the representative is not a reasonable rejection, nor did they state a reason for the rejection within a reasonable period of time. I have one other question. I'm hogging the questions again. I have one other question. Even if we agree that the contract as between you and the debtor authorized you to pay the tax, is there some statute or some legal principle you could provide to show that the county was obliged to accept, even if it were at the correct place, even assuming that, to accept a payment from someone who was not the taxpayer? So the contract might have been binding as between you and the debtor. What was the obligation on the county? To be honest, Your Honor, we are shocked we can't find California law on this, that the county has an obligation to take a tax payment from a lien holder of record. I have to admit, I thought it would be there, and as an outstater myself, I was kind of surprised it wasn't there. But I'll be candid with the Court. We didn't find it. It seems absolutely logical that if you're a subordinate lien holder, you should have the right to do it. And I have a hunch that's the reason that it generates the point that you get to the stage in the loan documents that you're getting an irrevocable power of attorney because there may be vagueness out there in the case law or the statutes. I'm speculating on that point. But we did not find it. I quite frankly thought there would be. We would suggest, however, it's perfectly logical, if you're a subordinate, because it doesn't only deal with counties. What happens if a first lien holder agrees in a bankruptcy court with the debtor, hi, the debtor is not going to pay my loan for two years, so we can run up a bunch of penalty interest and then we'll let it go to foreclosure, and the second lien holder will get stuck with it. Why is that fair? I mean, logically the lien holder should have the ability to go ahead and pay that and at least keep the damage from them from occurring, which is exactly why we would suggest why a rule of effective tender in a courtroom in a distressed property situation is a perfectly rational, reasonable tender. Prevent the damage to the lien holder. We would also point out this did not damage the settlement agreement. These were two loans on two properties out of some 50 entities. The settlement agreement was approved anyway. The issue isn't whether the settlement agreement was approved. The issue is whether or not these taxes were paid off, which is why it's still a live issue as a refund or credit that would occur back to the property. Again, the whole posture seems odd, and it raises perhaps finally the procedural point before the court. This is a complaint is how this court case brought up. This was brought up through the formation, the form of the formal complaint in which the Los Angeles County sued Bank of America in the bankruptcy court seeking a determination after the fact, well after the fact, that the tender was ineffective. They didn't articulate in their complaint any question regarding the address of the payment. Their entire position was that we can't do it because of a settlement that hadn't yet been approved by the court. In that complaint, I would also offer the comment that what they're effectively doing, and we raise this in our brief, is in effect an injunction against the irrefutable authorization to pay the taxes. We have not briefed, although subject matter jurisdiction is always an issue, as to whether or not the bankruptcy court would have jurisdiction after Stern v. Marshall came down from the Supreme Court in June, which was after these briefings, because it is a complaint by the county against the Federal Bank declaring that a tender made by the bank to the county was ineffective. We would suggest that that's rather a questionable procedure here, but I think even more than the subject matter and procedure draws home the point of what's being done here. The county, when it articulated why the tender shouldn't have been effective, doesn't cite an address. This comes up a significant later period of time when they're filing a responsive briefing and indicates why an early and prompt and clear reason as to why the tender is effective should be dealt with. The reason articulated in their complaint, which they were the plaintiff, did not articulate, they did articulate the standard of the settlement pending being, and we don't disagree as to a settlement being potentially binding and in good faith between the two parties, that between the two of them they ought to try to abide. That's different from the two parties attempting to strip out the irrevocable power of attorney held by a third-party bank of America, which we would suggest could not be done in any case, certainly can't be done under Stern v. Marshall in the current context of subject matter jurisdiction. Well, there wasn't really a motion to do that, right? You're just saying that was the result of their position? That would be the result. We can't take your money because we have a pending settlement motion. It did not move the settlement because it simply said the taxes were paid on those two. It would not move the settlement. In fact, it does. I'm sorry. I'm sorry. Go ahead. The question is whether they're entitled not to accept the tender in the court, so. We agree. They filed as a declaratory judgment between the county and Bank of America. Do you want to save some time? I'm sorry. Yes, ma'am. There's a lot of questions. Thank you. I'll save some time. May it please the Court. Barry Glasser on behalf of the County of Los Angeles Tax Collector. First of all, Your Honors, I'd like to just point out there's nowhere in the record, and I was the attorney of record that was handed the envelope by Mr. Gaffney's partner at that time. There was no one from the county in the courtroom or on the phone. No one. There was no representative. There's nowhere in the record that would demonstrate that. Even if there is someone, was someone from the county, that doesn't affect statutory obligations to make the payments pursuant to Revenue and Taxation Code Section 2613. Now, it's quite obvious why Bank of America handed me the envelope at the hearing. They knew on March 10th that the county and the debtors at that time at the status conference on the adversary complaint regarding the issues that were settled on the record on March 10th, that the county could not accept payment from anyone other than the debtors. And the reason for that being, Your Honors, is that they wanted to impair the county's obligations and allow the county to vote on the debtors' plans as opposed to the Charlestown plan. Now, Mr. Gaffney ignores that completely. But does that really have, I mean, that's the motivation, I guess, for their move. But the real question would be whether you had an obligation to accept the tender or not. I did not have an obligation. In fact, I stated on the record, Your Honor, if you look at the excerpts of the record, page 283, part of the transcript of the hearing on April 9th, that I had no authority to accept that. I had no authority whatsoever. However, the Revenue and Taxation Code section sets forth, as Judge Wilson properly ruled, sets forth the way that taxes, the statutory obligations are to be paid. And it's to be paid at the office, which, by the way, the debtors did when they made the payment. Earlier this year, the two cashier's checks, they went to the window. Obviously, they learned how to do it properly. Now, with regard to the issue in the proof of claim, the Board of Supervisors can allow other methods. I'm sure Bank of America could have asked me, is this the proper way to do it, instead of surprising me at the hearing, handing me an envelope with two cashier's checks when I didn't have the authority. So their point, as I understand it, Bank of America's point is that the county accepts payment, tax payments at places other than at the tax collector's office, and there's no evidence in the record that the Board of Supervisors have approved of those alternative places. Now, are you, do you disagree with that, or is there evidence, is there some place that's judicially noticeable that says Board of Supervisors has identified these alternative places for payment? Yes, one of the places is on the proof of claim, and that's the P.O. Box, and that's in the record that Mr. Gaffney specifically issued. And it shows the Board of Supervisors' approval of it? That's not in the record. That wasn't addressed, Your Honor, at the hearings in the Bankruptcy Court or in the adversary complaint or in Bank of America's counter-complaint. They didn't raise that issue at all. The fact of the matter is, in preparing for today's hearing, there's a state court of appeals, two under Cal App III, 1154 Gaffney v. Downey Loan Association. The rule governing tenders are strict and strictly applied, and where the rules are prescribed by statute or rules of court, the tender must be in such form as to comply therewith. Now, they could have gone on the county tax collector's website and determined the various ways to pay the taxes. In fact, they set that forth in their brief. They have a footnote in their brief setting forth the various ways, but Bank of America didn't comply with any of them. They obviously knew about it. Now, are you telling us, the court, that the Board of Supervisors has agreed or has ordered that taxes could be collected at via a post office box and by EFT? I'm not telling you that, Your Honors. I'm telling you that that is a method that's put on the proof of claims. There's a specific P.O. box to pay bankruptcy payments that are owed by debtors. Now, what's interesting is these obligations are pre-petition obligations. They were over two years after Bank of America reported the tender to me in court without a county representative being in place. Over two years. They had accrued interest and penalties, and we settled on one of the issues regarding the pre-petition penalties, and therefore the debtors got the county to agree to discount that amount by 2% to avoid massive litigation in this matter, and therefore getting the county to vote for the debtors' plans. Now, it's clear that had Bank of America had an interest to protect their security, as Mr. Gaffney said, they would have made this payment earlier. Why did they wait until the hearing to approve a settlement on April 9th when these taxes were accruing for years? It doesn't make sense, Your Honor. Now, does Your Honors have any additional questions? I have no questions. Yes, Your Honor. He said he has no questions. I have no questions. Thank you, Your Honor. Your Honor, if I could start by asking Mr. Bizer's question. The amount at issue had not been determined. It is when the motion was filed, prior to the motion being filed in the settlement agreement, there was a dispute between the county and the debtor as to how much was owed. The settlement proposed the exact dollar amount. That's what we paid. And, in fact, we paid all the ongoing taxes up until the filing date, which was in 2009. Taxes are in arrears. See, this is not something that sat out there for years on it, and it is pretty rare for the banks to be advancing taxes much earlier than about a year or two after they go into arrears, much less in a bankruptcy. So we didn't know the amount had just been agreed to, and number two, it's not atypical. As the court points out, there is nothing in the record suggesting that the county ever approved EFT, wire information, post office boxes, or anything else as a sign. And yet, when they filed in the place of payment in the official form for proofs of claim, they don't use the statutory address. And as we point out, it was not anywhere in either the complaint record before Judge Thompson below or in Judge Wilson of the district court until you find it for the first time in the response to the motion for summary judgment. I have the complaint before me. This appears in Exhibit 92 as part of the record. The complaint filed by the county as plaintiff for a determination makes no allegation in the relief sought as to the improper place of tender as a justification for a denial of the tender. It's not alleged. And yet, they're the plaintiff. We would suggest if ever there was proof positive that a failure to articulate why a tender of nearly a million dollars is being rejected, the time to do it is when you file a complaint under Rule 11 stating what your theories are, your reasons are, nor was it ever amended. It isn't until we get to the motion for summary judgment pleading at the brief period it was withdrawn before Judge Wilson that we see it in a response brief. Can you wrap up? You're over time. Yes, Your Honor. The main point we'd make to the Court, we do think this is an important principle that a party should be able to advance to protect themselves. We think the documentation provision shouldn't be allowed to be pulled into a settlement and be barred, which is the only articulated reason at the lower court as to why they weren't paying or accepting the payment. Thank you. All right. The case of Merulo Maddox Properties, Inc. v. County of Los Angeles is submitted and we're adjourned until tomorrow. All rise.
judges: Nelson, Gould, Ikuta